IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ZIONS FIRST NATIONAL BANK,** a national banking company, | ) ) ) |
| **Plaintiff,** | ) ) ) |
| v. | ) Case No. 10-CV-68-TCK-PJC ) |
| **5811 49TH AVE., LLC,** a California Limited Liability Company; **JOHN DIGUISEPPE; BEVERLY NOBLE; UNITED STATES OF AMERICA, ex rel.; SMALL BUSINESS ADMINISTRATION; CHAMPION SUPPLY COMPANY, INC.; STATE OF OKLAHOMA, ex rel.; OKLAHOMA TAX COMMISSION; DENNIS SEMLER,** Tulsa County Treasurer; and **DOES 1 thru 10;** | ) ) ) ) ) ) ) ) ) ) ) ) |
| **Defendants.** | ) |

### OPINION AND ORDER

Before the Court is Plaintiff's Motion for Summary Judgment (Doc. 57). Defendants John Diguiseppe and Beverly Noble filed a response and objection to the motion (Doc. 66). Defendant United States of America, ex rel. Small Business Administration filed a response indicating its lack of objection to the motion (Doc. 58). Defendant State of Oklahoma, ex rel. Oklahoma Tax Commission filed a response indicating its lack of objection to the Motion, so long as its claim is given proper priority (Doc. 59). No other Defendants filed responses to the motion. Plaintiff filed a reply (Doc. 67) and supplemental reply (Doc. 69).

**I.      Factual Background**

Plaintiff, Zions First National Bank ("Bank") is a national banking company. Defendant 5811 49th Ave., LLC ("LLC") is a California Limited Liability Company and the record title holder

of the real property that is the subject of this action. John Diguiseppe and Beverly Noble (collectively "Guarantors") are individuals who signed personal guaranty agreements and are also the members/managers of the LLC. LLC and Guarantors are collectively referred to as "Debtors."

On or about December 11, 2007, LLC executed a promissory note to Bank in the amount of $1,493,000.00 ("Note A"). The loan transaction represented by Note A is referred to as the "First Loan." Guarantors each executed and delivered to Bank a guaranty of Note A ("First Loan Guaranties"). LLC also executed a real estate mortgage to the Bank ("First Mortgage"). The real property described in the First Mortgage is referred to as the "Real Property." On or about December 11, 2007, LLC executed and delivered a second promissory note to the Bank in the amount of $1,007,000.00 ("Note B"). The loan transaction represented by Note B is referred to as the "Second Loan." Note A and Note B are collectively referred to as the "Notes." Guarantors each executed and delivered to the Bank a guaranty of Note B ("Second Loan Guaranties"). The First Loan Guaranties and the Second Loan Guaranties are collectively referred to as the "Guaranties." LLC executed a second real estate mortgage to the Bank ("Second Mortgage"). The First Mortgage and Second Mortgage are collectively referred to as the "Mortgages." It is not disputed that LLC is in default on the First Loan and the Second Loan.

The Mortgages were intended to secure the Notes and granted a lien interest in the Real Property, as well as the buildings, improvements, and fixtures thereon. Contemporaneously with the execution of the Notes, LLC executed and delivered an assignment of rents to the Bank related to the Notes. LLC also executed a commercial Security Agreement, which conveyed a security interest to the Bank in LLC's assets. The First Mortgage was filed of record in the Office of the County Clerk of Tulsa County, Oklahoma, on December 14, 2007, and indexed as Document

2007137399. The Rent Assignment was filed of record in the Office of the County Clerk of Tulsa County, Oklahoma, on December 14, 2007, and indexed as Document 2007137398. The Second Mortgage was filed of record in the Office of the County Clerk of Tulsa County, Oklahoma, on December 14, 2007, and indexed as Document 2007137397.

On January 11, 2010, Bank initiated this lawsuit in state court. Following removal, Bank filed an Amended Complaint. On February 17, 2010, counsel for Bank sent an email proposal to counsel for Guarantors, which included the following:

> [Bank] is willing to favorably consider a release of the [Guarantors] based upon their ability to pay and in consideration of their cooperation & agree upon the above proposal. In order to evaluate the respective financial abilities of [Guarantors], [Bank] requires completion of a Financial Disclosures for each guarantor as well as any and all entities in which they hold a significant interest, either directly or indirectly through a trust or other legal entity controlled by either [Guarantors] directly or indirectly. Any release granted is subject to revocation if at any time in the future a material misrepresentation is discovered in any of the disclosures. Form of financial disclosures acceptable to [Bank] are attached.

(Supp. to Reply in Support of Pl.'s Mot. for Summ. J., Doc. 69, at 2.) Counsel for Guarantors accepted the offer, with two conditions unrelated to the above promise, by email dated March 8, 2010. Counsel for Bank accepted the two conditions, and the agreement was made final by email dated March 8, 2010. The Court refers to the above-described promise by Bank to "favorably consider release" of Guarantors as the "Email Agreement."

On March 10, 2010, the Court entered an Agreed Order Appointing Receiver and Granting Injunctive Relief, which appointed C. David Rhoades ("Receiver") as receiver. On July 30, 2010, the Court entered an Order authorizing Receiver to sell all of the real and personal property known as the Super 7 Motel (the "Sale Property") to M&B Interests, LLC for $1,080,000.00 ("Sale"). Receiver closed the sale on or about July 30, 2010, and on August 2, 2010, the Bank received net

proceeds of $1,019,297.86 ("Proceeds"). The claims of Defendant Dennis Semler, Tulsa County Treasurer, were paid in full as part of the Sale. The remaining Proceeds of $1,019,297.86 were applied to pay the $1,493,000.00 principal balance of the First Loan down to $438,082.23. Since all of the remaining Proceeds were applied to the First Loan, the principal balance of Second Loan remains at $1,007,000.00.

Allowing for all just and proper credits, plus advances made by the Bank to protect and preserve the Real Property, including, but not limited to, insurance, collection expenses, attorney fees, security and the like, the total amounts owed are:

1. First Loan current principal is $438,082.23, plus (1) interest accrued upon the principal balance of $1,457,380.09 prior to application of the Proceeds at the per diem rate of $456.24 to August 2, 2010, resulting in the amount of $139,202.28, and (2) upon the remaining principal balance of $438,082.23 after application of the Proceeds at the current per diem rate of $17.74 after August 3, 2010, until November 30, 2010 (119 days) in the amount of $2,111.06 for a total additional interest thereon in the amount of $141,313.34 ($139,202.28 + $2,111.06). Interest continues to accrue on the First Loan at the per diem rate of $17.74.

2. Second Loan current principal is $1,007,000.00, plus interest accrued to November 30, 2010, in the amount of $72,870.58. Interest continues to accrue on the Second Loan at the per diem rate of $230.77.

3. Additional charges have accrued as provided in the Notes and Mortgages for late fees totaling $2,955.89; pre-payment penalties of $43,721.40; $300.00 for title reports for a total amount of additional changes as of December 23, 2009, of $46,721.40.

4.	In summary, the balance of all amounts owed to the Bank as of November 30, 2010, is as follows:

    A.    Note A
            1.    Principal    $438,082.23
            2.    Interest    $141,313.34
                 Total    $579,395.57
    B.    Note B
            1.    Principal    $1,007,000.00
            2.    Interest    $ 72,870.58
                 Total    $1,079,840.58
            3.    Additional Charges    $   46,721.40

GRAND TOTAL ("Bank's Claim")    $1,705,957.55

On December 9, 2010, Bank moved for summary judgment. Specifically, Bank seeks the following judgment: (1) an in rem judgment as to all Defendants, establishing that (a) Bank has the first in priority lien upon the Property and Proceeds from the Sale; and (b) it was entitled to apply the same to payment of the principal balances of the Notes; and (2) an in personam money judgment establishing joint and several liability against Debtors in the total amount of $1,705,957.55. Bank seeks judgment in this amount against LLC based on the terms of the Notes and seeks judgment in this amount against Guarantors based on the Guaranties. (*See* Pl.'s Mot. for Summ. J. 11.)

No Defendant opposes the requested in rem judgment. LLC does not oppose the requested money judgment against it. Guarantors oppose the requested money judgment against them on equitable grounds – namely, that Bank breached the Email Agreement to consider releasing Guarantors from their personal liability. Bank does not dispute the terms of the Email Agreement but contends that it made the decision not to release Guarantors only after good faith consideration and extensive review of their financial disclosures.

**II.     Summary Judgment Standard**

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id*. However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

**III.    Discussion**

    **A.     In rem Judgment**

There are no genuine issues of material fact raised by any Defendant, and Bank has shown that it is entitled to its requested in rem judgment establishing that (1) it has a first in priority lien upon the Property and Proceeds, and (2) was entitled to apply the same to payment of the principal balances of the Notes. Thus, Plaintiff's motion is granted as to the requested in rem judgment.

    **B.     Money Judgment Against LLC**

Under the Oklahoma Uniform Commercial Code:

(b) If the validity of signatures is admitted or proved and there is compliance with subsection (a) of this section,[1] a plaintiff producing the instrument is entitled to

---

[1] Bank has shown, and LLC has not disputed, compliance with Okla. Stat. tit. 12A, § 3-308(a).

6

> payment if the plaintiff proves entitlement to enforce the instrument under [Okla. Stat. tit. 12A, § 3-301 ("§3-301")][2] of this act, unless the defendant proves a defense or claim in recoupment. If a defense or claim in recoupment is proved, the right to payment of the plaintiff is subject to the defense or claim, except to the extent the plaintiff proves that the plaintiff has rights of a holder in due course which are not subject to the defense or claim.

Okla. Stat. tit. 12A, § 3-308 (internal footnote omitted) (footnote added). Defendant LLC, the party to the Notes, has not asserted any defenses or claims in recoupment, and Bank has sufficiently demonstrated that LLC is liable for any unpaid amounts due under the Notes.

### C.     Money Judgment Against Guarantors

Guarantors do not dispute the amounts due as set forth above, which are evidenced by affidavits of Kevin Kelly ("Kelly"). (*See* Ex. 6A to Pl.'s Mot. for Summ. J.; Ex. 1 to Pl.'s Reply in Support of Mot. for Summ. J.) Guarantors do not dispute the authenticity of their signatures or that obligations arose under the relevant Guaranties. Guarantors' only defense to enforcement of the Guaranties is a breach of a second agreement not contained within the Guaranties themselves – namely, the Email Agreement to consider whether to release Guarantors following submission of financial disclosures. Guarantors argue that the Court should deny Bank's motion and "refuse to accelerate the note and may deny the full relief based upon equitable grounds." (Guarantors' Resp. to Pl.'s Mot. for Summ. J. 4.) Specifically, Guarantors argue:

> Because [Bank] has not shown a fair and good faith treatment of [Guarantors] in connection with its commitment to consider their personal release, the Court should deny the entry of summary judgment against [Guarantors] until such time as [Bank] has satisfied the Court and [Guarantors] that it has reviewed their financial disclosures and fully and fairly considered their release from personal liability.

(*Id.* 4.)

---

[2] Bank has shown, and LLC has not disputed, that Bank is a "person entitled to enforce instrument" under § 3-301.

Guarantors rely upon *Murphy v. Foxx*, 278 P.2d 820 (Okla. 1955) and *Iglehart v. Warrington*, 891 P.2d 619 (Okla. Civ. App. 1995) in support of their position.

The cases cited by Guarantors stand for the proposition that "in a suit of equitable cognizance to foreclose a real estate mortgage the trial court may refuse foreclosure where there has been a technical default due to a mistake or mere venial inattention and of no damage to the mortgage security or prejudice to the mortgagees." *Murphy*, 278 P.2d at 826; *Iglehart*, 891 P.2d at 622 ("[A] mortgage foreclosure is an equitable proceeding and the trial court may refuse to accelerate a note on equitable grounds."). Interpreting Oklahoma law, the Tenth Circuit has stated that "whether the Oklahoma court permits acceleration depends on the conduct of the mortgagee and whether he has dealt fairly with the debtor or has acted oppressively or unconscionably." *Greenberg v. Serv. Bus. Forms Indus., Inc.*, 882 F.2d 1538, 1542 (10th Cir. 1989). This equitable power to refuse acceleration of a mortgage should "be used sparingly." *Iglehart*, 891 P.2d at 623.

Guarantors have failed to demonstrate that this Court should, for equitable reasons, fail to enforce their obligations under the Guaranties. First, Guarantors' cited cases appear to be limited to mortgagee's attempted acceleration of amounts due under a mortgage agreement. In this case, Bank seeks enforcement of personal guaranties. Second, assuming the above-described equitable principles provide a defense to enforcement of the Guaranties, Bank's alleged conduct of failing to comply with the Email Agreement does not rise to the level of oppressive or unconscionable conduct contemplated by Oklahoma law. *Compare Resolution Trust Corp. v. Mustang Partners*, 946 F.2d 103, 105 (10th Cir. 1991) (applying Oklahoma law) (holding that mortgagee's alleged "error" in including late charges and other amounts in a statement of amount owed was not the type of error that "cause[d] or propogated the default, nor does it equate with mistake or inattention of the

8

magnitude that would excuse [the debtor's] default or delay [the debtor's] obligation to cure"); *Iglehart*, 891 P.2d at 622 (holding that trial court erred in concluding that equitable principles prevented mortgagor from accelerating debt because debtor did not "take legal action to remedy what he perceived as a breach of the agreement" and instead "chose to withhold payment and now wishes to be relieved of the consequences of that decision"), *and Iglehart*, 891 P.2d at 622 (holding that trial court erred in concluding that equitable principles prevented mortgagor from accelerating debt because debtor himself chose to withhold payment and could not be relieved of the consequences of that decision), *with Murphy*, 278 P.2d at 826 (affirming a trial court decision refusing to enforce an acceleration clause in a mortgage after concluding the evidence showed only a technical default due to inattention and inadvertence and that the mortgagee had refused payment, thereby acting unconscionably in an effort to cause a default).

Finally, assuming breach of the Email Agreement could be considered oppressive or unconscionable conduct, Guarantors have not proven their allegation that Bank failed to comply with the Email Agreement. In response to the allegation of non-compliance with such agreement, Bank submitted evidence that it considered in good faith whether to release Guarantors, after a full and fair disclosure of their financial documents. By affidavit, Kelly testified:

> The defendants are simply not aware of the fact that the Bank and our lawyers spent a significant amount of time reviewing and analyzing the several hundred pages of tax returns, financial statements, financial disclosure affidavits and other related documents (collectively, the "Financial Data"). We did fully consider the Financial Data including but not limited to the: (1) 2007 personal financial statements of the Defendants reflecting a collective net worth of approximately $20,000,000 provided to the Bank as part of the loan application process; (2) the 2009 personal financial statements of the Defendants reflecting a collective net worth of approximately $2,800,000 and (3) at least one gratuitous transfer to an insider of non-exempt real property. We did what we agreed to do, which was to give a good faith consideration and review of the overall financial circumstances of the Defendants and decide if we would accept their proposal to merely be allowed to walk away

> from the debt they agreed to pay. Without waiving the attorney-client privilege, I state on behalf of the Bank that there were many discussions with our lawyers as well as among several of my co-workers at the Bank prior to making our decision to reject the Defendants' proposal. Based upon a review of the Financial Data in light of the overall circumstances in this case and after considerable deliberation, it was and remains the decision of the Bank not to agree to the proposed release of the Defendants.

(Supp. Aff. of Kelly, Ex. 1 to Pl.'s Reply in Support of S.J.) Guarantors did not seek leave to submit evidence in dispute of such affidavit. Nor is it likely that Guarantors have the ability to dispute such evidence, given their lack of personal knowledge of the Bank's decision-making process. Accordingly, the Court finds no genuine dispute of fact that would preclude summary judgment in favor of Bank as to enforcement of the Guaranties.

## IV.     Conclusion

Plaintiff's Motion for Summary Judgment (Doc. 57) is GRANTED in its entirety as to all requested relief and in the amounts set forth in Plaintiff's reply in support of its motion for summary judgment. Plaintiff is ordered to submit a proposed Judgment no later than three days from the date of this Opinion and Order.

SO ORDERED this 21st day of September, 2011.

_____
**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**